**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

TONYA BROWNE,                                    :
8601 Temple Hills Road, Lot 28                   :
Temple Hills, MD 20748                           :
                            Plaintiff,           :          Civil Action No. 8:16-cv-222
                                                 :
v.                                               :
                                                 :
EQUIFAX INFORMATION SERVICES, LLC,               :
1550 Peachtree Street, NW                        :
Atlanta, GA 30309                                :
                                                 :
Serve:  CSC-Lawyers Incorporating Service Co.    :
           7 St. Paul Street                     :
           Suite 280                             :
           Baltimore, MD 21202                   :
                                                 :
and                                              :
                                                 :
SOUTHWEST CREDIT SYSTEMS, L.P.,                  :
5910 W. Piano Parkway, Suite 100                 :
Piano, Texas 75093                               :
                                                 :
Serve:  The Corporation Trust Incorporated       :
           351 West Camden Street                :
           Baltimore, MD 21201                   :
                                                 :
                            Defendants.          :
_____ :

## COMPLAINT

COMES NOW the Plaintiff, Tonya Browne ("Plaintiff"), by counsel, and for her

Complaint against the Defendant, she alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages, costs, and attorneys'

fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

2.      Equifax, one of the "Big 3" consumer reporting agencies, has a long history of consumer complaints and lawsuits alleging (and establishing) that it unreasonably mixed the credit files and information of one consumer with the credit reports of another consumer. In this case, representative of numerous others, Equifax combined or mixed the credit files of the Plaintiff with a complete stranger with a similar name, resulting in a collection's account appearing in Plaintiff's credit report that belonged to someone else.

3.      Plaintiff further alleges claims against Equifax pursuant to § 1681i of the FCRA for Equifax's failure to investigate and correct the information in Plaintiff's credit file after she disputed the inaccuracies on multiple occasions.

4.      Plaintiff also alleges claims against Southwest Credit Systems, L.P. ("Southwest") pursuant to §§ 1681s-2(b) of the FCRA and 1692e(8) of the Fair Debt Collection Practices Act based on its failure to conduct a reasonable investigation after Plaintiff disputed the collection account and for reporting credit information to Equifax it know or should have known was false.

## JURISDICTION

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

6.      Plaintiff is a natural person residing in Maryland, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. §1681a(c).

7.      Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company authorized to do business in Maryland.

8.      Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing

information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

9.      Upon information and belief, Southwest Credit Systems, L.P. ("Southwest") is a debt collection company organized under the laws of Texas. Southwest regularly attempts to collect consumer debts. At all times relevant hereto, Southwest was a "debt collector" as defined by the FDCPA and licensed by the Maryland Department of Labor, Licensing and Regulation and a "furnisher" as governed by the FCRA.

## FACTS

10.     In August 2015, Plaintiff obtained a copy of her Equifax credit report to pay down some of her credit card balances. Plaintiff intended to pay down the balances of her credit cards and then apply for a mortgage.

11.     At this time, Plaintiff learned that Equifax was reporting inaccurate information in her credit report, including names and address that did not belong to her.

12.     For example, Equifax was reporting name variations in Plaintiff's credit report, such as Tonya S. Kelly and Kelly Kathleen Michelle. Plaintiff never used either of these names.

13.     Similarly, Equifax was associating Plaintiff with an address in Point of Rocks, Maryland. Plaintiff had never lived or worked in Point of Rocks.

14.     Plaintiff faxed a letter to Equifax disputing the names and addresses inaccurately associated with her. Plaintiff included copies of her birth certificate, driver's license, and marriage license so Equifax could verify that the information belonged to someone else.

15.     On September 8, 2015, Equifax provided its reinvestigation results to Plaintiff, which indicated it deleted the Point of Rocks address. Equifax further indicated that the disputed names were no longer reporting in Plaintiff's credit report.

16.     After receiving a copy of the reinvestigation results, Plaintiff again obtained a copy of her credit report from Equifax, which still showed the inaccurate names.

17.     Worse yet, Plaintiff noticed that a collection account with Southwest appeared in her credit report. This account was a Comcast account opened in 2009 and was sold to Southwest for collection.

18.     This information was inaccurate. Plaintiff did not open an account with Comcast in 2009.

19.     After reviewing the account, Plaintiff called Southwest to dispute the information and to learn why the collection account appeared in her credit file.

20.     During this telephone call, the Southwest representative confirmed that the address and social security number associated with the account did not match Plaintiff's address or social security number.

21.     Plaintiff also provided the account number on her credit report to the Southwest representative, which prompted the representative to ask whether she ever lived in Point of Rocks, Maryland?

22.     After Plaintiff indicated she never lived in Point of Rocks, the Southwest representative explained that Plaintiff likely had a mixed credit file and she needed to contact Equifax's "mixed credit file department" to have the information removed.

23.     Plaintiff subsequently contacted Equifax on multiple occasions to dispute the account. Each time, Plaintiff explained that the account belonged to someone else and that she did not have a Comcast account in 2009. Plaintiff further explained in telephone conversations with Equifax's employees that Southwest told her she had a mixed credit file.

Case 8:16-cv-00222-TDC   Document 1   Filed 01/22/16   Page 5 of 16

24.     Nevertheless, Equifax and Southwest refused to remove the information from her credit report. Instead, Equifax mailed Plaintiff investigation results dated November 23, 2015, and December 11, 2015, indicating that Equifax "verified that this item has been reported correctly."

25.     The Defendants, in all regards, failed to perform a meaningful and searching inquiry into the substance of Plaintiff's dispute, causing her significant damages.

26.     This derogatory item and mismatched sets of credit information severely reduced the Plaintiff's credit score and prevented her from obtaining a satisfactory mortgage.

27.     As a result of this negative credit reporting, Plaintiff suffered actual damages.

**Equifax's Double Standard and Willful Misconduct**

28.     Equifax has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

29.     While Equifax claims that partial matches are reasonable because of possible creditor transcription error – a theoretical typo transposing two social security digits – Equifax does not possess any actual research or data to support its contrived risk of error.

30.     In contrast, Equifax has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

31.     As early as 1992, the Attorneys General of eighteen states were forced to file a lawsuit against Equifax because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to Equifax's responsibilities to prevent mixed files.

32.     Only three years after the Agreement of Assurances, the Federal Trade Commission ("FTC") brought another enforcement action due to Equifax's widespread

violations of the FCRA, including the creation of mixed files and then furnishing them to users who did not have a permissible purpose to view the information of the consumer. *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995). This enforcement action resulted in a consent order between Equifax and the FTC that sets forth certain procedures to prevent mixed files and to conduct reinvestigations as required by the FCRA.

33.     Despite the 1992 Agreement of Assurances and the 1995 Consent Order, Equifax's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present.  It does this in order to sell more credit reports.

34.     Equifax knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

35.     Equifax has been sued repeatedly for failing to prevent mixed consumer files, including the $18.6 million verdict on July 26, 2013 in *Miller v. Equifax Information Services, LLC*, 3:11-cv-1231 (D. Or. 2011) (Docket No. 79).

36.     The recent verdict from Oregon is not the only multi-million dollar verdict against Equifax in a mixed file case. In November 2007, a jury found in favor of another consumer with a mixed file and awarded her $219,000 in actual damages and $2.7 million in punitive damages. *Williams v. Equifax Information Solutions, LLC*, No. 48-2003-CA-9035-O (Orange County 2007).[1]

---

[1] Consumer Victory: Equifax Must Pay $ 2.9 million for Mixing Up Credit Files, The Consumer Advocate, Vol. 14, No. 1, National Association of Consumer Advocates (Jan.-Mar. 2008), at 14; Consumer Wins Fight For Credit Report Accuracy, Privacy Times, Dec. 6, 2007.

37.     These cases are representative of numerous other lawsuits around the country where Equifax has been sued for failing to prevent mixed consumer files. *See, e.g.*, *Apodaca v. Discover Financial Services*, 417 F. Supp. 2d 1220 (D.N.M. 2006).

38.     Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this Circuit. *See e.g.*, *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs.*, 510 F.3d 495 (4th Cir. 2007); *Abraham Lopez, Jr., v. Trans Union, LLC*, Civil Action No. 1:12-cv-902 (E.D. Va. 2012); *Alejandro Lopez, Sr. v. Trans Union, LLC*, Civil Action No. 1:12cv1325 (E.D. Va. 2012); *Chaudhary v. Experian Info. Solutions, Inc.*, Civil No. 3:13-cv-577 (E.D. Va. 2013); *Valdez-Estep v. Equifax Info. Servs.*, Civil No. 1:13-cv-00007 (E.D. Va. 2016); *Kang v. Equifax Info. Servs.*, Civil No. 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs.*, Civil No. 1:15-cv-01073 (E.D. Va. 2015); *Barclay v. Equifax Info. Servs.*, Civil No. 1:15-cv-00691 (E.D. Va. 2015); *Robinson-Huntley v. Equifax Info. Servs.*, Civil No. 1:15-cv-00626 (E.D. Va. 2015).

39.     Equifax knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

40.     Despite these lawsuits and multi-million dollar verdicts, Equifax has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

41.     Upon information and belief, Equifax has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

42.     Accordingly, Equifax's violation of 15 U.S.C. § 1681e(b) was willful and Equifax is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

43.     Equifax's failure to modify its procedures caused substantial harm to the Plaintiff.

**COUNT ONE:**
**(Violation of 15 U.S.C. § 1681e(b))**
**(EQUIFAX)**

44.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

45.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

46.      As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

47.     Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

48.     The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT TWO:**
**(Violation of 15 U.S.C. § 1681i(a)(1))**
**(EQUIFAX)**

49.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

50.     Defendant violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file.

51.      As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

52.     Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

53.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from Equifax pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT THREE:**
**(Violation of 15 U.S.C. § 1681i(a)(2))**
**(EQUIFAX)**

54.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

55.     Defendant violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send Southwest all relevant information that it received in Plaintiff's dispute.

56.      As a result of this alleged conduct, Plaintiff suffered actual damages, including

but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

57.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

58.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT FOUR:**
**(Violation of 15 U.S.C. § 1681i(a)(4))**
**(EQUIFAX)**

59.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

60.     Defendant violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's communications.

61.      As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

62.     Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

63.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT FIVE:**
**(Violation of 15 U.S.C. § 1681i(a)(5))**

**(EQUIFAX)**

64.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

65.     Defendant violated 15 U.S.C § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified.

66.      As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

67.     Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

68.     The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT SIX:**
**(Violation of 15 U.S.C. §1681s-2(b)(1)(A))**
**(SOUTHWEST)**

69.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

70.     On one or more occasions within the past two years, by example only and without limitation, Southwest violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

71.     When the Plaintiff mailed her disputes to Equifax, it used a dispute system named, "e-Oscar", which has been adopted by the credit reporting agencies and by their

furnisher-customers such as Southwest.  It is an automated system and the procedures used by the CRAs are systemic and uniform.

72.     When Equifax receives a consumer dispute, Equifax (usually via an outsourced vendor) translates that dispute into an "ACDV" form.

73.     Upon information and belief, the ACDV form is the method by which Southwest has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

74.     Based on the manner in which Equifax responded to the Plaintiff's disputes, representing that Southwest had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Equifax did in fact forward the Plaintiff's dispute via an ACDV to Southwest.

75.     Southwest understood the nature of the Plaintiff's dispute when it received the ACDV from the credit bureaus.

76.     When Southwest received the ACDV from Equifax, Southwest as well could have reviewed its own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute.

77.     Notwithstanding the above, Southwest follows a standard and systemically unlawful process when they receive the ACDV dispute.  Basically, all Southwest does is review its own internal computer screen for the account and repeat back to the ACDV system the same information that they already had reported to the CRAs.

78.     When Southwest receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

79.     As a result of Southwest's violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation,

embarrassment, humiliation and other mental and emotional distress.

80.     The violations by Southwest were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Southwest was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

81.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Southwest in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT SEVEN:**
**(Violation of 15 U.S.C. §1681s-2(b)(1)(B))**
**(SOUTHWEST)**

82.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

83.     On one or more occasions within the past two years, by example only and without limitation, Southwest violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax.

84.     As Plaintiff detailed in the previous Count, Southwest has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

85.     Southwest is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

86.     Southwest does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

87.     Southwest understood the Plaintiff's disputes and that the accounts were not reporting her payment history accurately.

88.     Nevertheless, it ignored such information and instead simply regurgitated the same information they had previously reported to the CRAs.

89.     As a result of Southwest's violations of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

90.     The violations by Southwest were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Southwest was negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

91.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Southwest in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT EIGHT:**
**(Violation of 15 U.S.C. §1681s-2(b)(1)(C) and (D))**
**(SOUTHWEST)**

92.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

93.     On one or more occasions within the past two years, by example only and without limitation, Southwest violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the their representations within Plaintiff's credit files with Equifax without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

94.     Specifically, Southwest failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the CRAs.

95.     On information and belief, the Plaintiff alleges that Southwest rarely, if ever, adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

96.     Furthermore, Southwest knew that the Plaintiff disputed the subject accounts through her disputes to Equifax.

97.     The Plaintiff's disputes were bona fide as the subject account belonged to another person with a similar name.

98.     As a result of Southwest's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

99.     The violations by Southwest were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Southwest was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

100.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Southwest in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT NINE:**
**Violation of 15 U.S.C. § 1692e(8)**
**(SOUTHWEST)**

101.    Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

102.    Southwest violated 15 U.S.C. § 1692e (8) by communicating information to Equifax that Southwest knew or should have known was false.

103.    As a result, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendant pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully Submitted,
**TONYA BROWNE**

By:___*/s/ Kristi C. Kelly*_____
Counsel

Kristi Cahoon Kelly, Esq. (No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com

*Counsel for Plaintiff*